# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT CUVO and LISA     :
CUVO, on behalf of the minor     :
Child, A.C.,     :
           Plaintiffs,     :    No. 3:18-cv-01210
    :
      v.     :    (Saporito, M.J.)
    :
POCONO MOUNTAIN     :
SCHOOL DISTRICT, et al.,     :
    :
        Defendants.     :

## MEMORANDUM

This is a civil rights action, initiated upon the filing of the complaint in this matter on June 14, 2018. (Doc. 1). An amended complaint was filed as a matter of right on June 19, 2018. (Doc. 4). In their amended complaint, the plaintiffs allege violations of A.C.'s federal civil rights while he was a member of the wrestling team of the defendant, Pocono Mountain School District (the "school district"). The plaintiffs also assert state law claims of negligence and respondeat superior. The defendants have moved to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 14). This motion has been fully briefed and is ripe for disposition. (*see* Doc. 18; Doc. 23; Doc. 24).

For the reasons set forth herein, we will grant the motion in part and deny it in part.

## I.    *Statement of Facts*

The facts set forth in the amended complaint (Doc. 4) are as follows: A.C. was a home-schooled student who participated as a member of the school district's wrestling team. The team was coached by defendant Josh Haines and his assistant, defendant Michael Hollar. (Doc. 4 ¶¶16-18). Defendant William Hantz was the athletic director for the school district. During the course of a practice on December 18, 2017, the members of the wrestling team were told by Haines and Hollar that they would not be wrestling during that practice, but rather they would be playing tackle football. (*Id.* ¶¶19-20). The tackle football was conducted indoors without any protective equipment where Haines and Hollar participated in the activity. (*Id.* ¶¶21-22). It is alleged that Haines and Hollar engaged in and allowed the activity to continue for approximately twenty minutes where students were getting tackled violently to the ground in ways that it was obvious that injury would occur if the activity was permitted to continue. (*Id.* ¶23). After the activity was conducted for approximately twenty minutes, A.C. was tackled to the ground by

another student who was acting pursuant to the order of Haines and Hollar, and as a result, A.C.'s femur snapped in half causing him excruciating pain along with required surgery and extensive physical therapy. (*Id.* ¶¶25-30). Also, the plaintiffs have alleged that the tackle football was being played on wrestling mats which are designed to create friction and grip in order to prevent slipping and sliding. (*Id.* ¶27). When A.C. was tackled, the mat created a grip which did not permit A.C.'s leg to slide and give way therefore causing his femur to snap. It is alleged that A.C. is permanently unable to participate in activities which he enjoyed prior to this injury. (*Id.* ¶31).

Counts I and II of the amended complaint assert Fourteenth Amendment claims, "for a state created danger and for the right to bodily integrity." Count III alleges a §1983 *Monell* liability claim. Counts IV and V allege state law claims for negligence and respondeat superior respectively. The defendants have filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.   *Legal Standards*

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which

relief is granted." Fed. R. Civ. P. 12(b)(6).  "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen, Inc.,* 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).  Under Rule12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991); *Johnsrud v. Carter*, 620 F.2d 29, 32-33 (3d Cir. 1980); *Holocheck v. Luzerne County Head Start, Inc.,* 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005).  In deciding the motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial

notice." *Tellab, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

### III.    Discussion

The defendants have moved for dismissal of the plaintiffs' claims on a variety of grounds including whether the plaintiffs have failed to allege facts which support a §1983 state created danger or bodily integrity claim; whether the plaintiffs' count III *Monell* claims against defendants Haines and Hollar should be dismissed; whether the plaintiffs' amended complaint should be dismissed on the grounds of immunity; whether the plaintiffs' respondeat superior count should be dismissed for failure to state a claim; whether the plaintiffs are entitled to punitive damages; and whether the plaintiffs Robert Cuvo and Lisa Cuvo, have failed to state a claim upon which relief may be granted on their own behalf.

The plaintiffs have brought this federal civil rights action under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

> jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, the plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

Here, the plaintiffs advance Fourteenth Amendment claims, based on the events of December 18, 2017, on the basis of a state created danger theory (Count I), and a right to bodily integrity theory (Count II). The defendants maintain that the plaintiffs' Fourteenth Amendment claims are not cognizable under § 1983.

## A. State-Created Danger (Count I)

### 1. Applicable Law

In *Kniepp v. Tedder*, 95 F.3d 1199, 1201 (3d Cir. 1996), the Third Circuit first adopted the state created danger theory as a mechanism by which plaintiffs may establish constitutional violations, under Section 1983, if an individual incurs harm as a direct result of certain state actions. In other words, "liability may attach where the state acts to *create* or *enhance* a danger that deprives a plaintiff of his or her Fourteenth Amendment rights to substantive due process." *Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013) (emphasis in original).

In *Bright v. Westmoreland County*, 443 F.3d 276 (3d Cir. 2006), the Third Circuit articulated the following four-factor test to determine whether a plaintiff has stated a claim under the state-created danger exception:

> (1) The harm ultimately caused was foreseeable and fairly direct;
>
> (2) A state actor acted with a degree of culpability that shocks the conscience;
>
> (3) A relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected

to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) A state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Id.* at 281.

## 2. Application

The Court will consider the sufficiency of the plaintiffs' allegations with respect to each element of the claim.

### i. Foreseeability and Directness

To satisfy the first element of their state-created danger claim, the plaintiffs must allege facts to plausibly show that the harm A.C. suffered was a "foreseeable and fairly direct" consequence of the defendants' actions. *Bright*, 443 F.3d at 281.

The Third Circuit explained in *Phillips v. County of Allegheny*, 515 F.3d 224, 238 (3d Cir. 2008), that "[t]o adequately plead foreseeability . . . , we require a plaintiff to allege an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." It can

be sufficient to allege facts that "ordinary common sense and experience [would] sufficiently inform [ ] the [defendant] of the foreseeability of the harm to the [plaintiff]." *Phillips*, 515 F.3d at 237 (citing *Kneipp*, 95 F.3d at 1199). For instance, in *L.R. v. School District of Philadelphia*, 836 F.3d 235 (3d Cir. 2016), it was "foreseeable that releasing a young child to a stranger could result in harm to the child." *Id.* at 245. Similarly, in *Kneipp*, it was foreseeable that abandoning a intoxicated woman alone in cold weather late at night, would result in harm to the woman. *See Kneipp*, 95 F.3d at 1208.

The defendants argue that the plaintiffs have failed to adequately allege the foreseeability element of the state-created danger exception because the plaintiffs have failed to plead facts that the defendants knew or should have known that the mats in question had gripping ability not suitable for sports other than wrestling or that Haines and Hollar, the wrestling coaches, should have had a basis to suspect that the mats would interfere with the practice. (Doc. 18, at 7-8).

The plaintiffs argue that the issue in this § 1983 claim is whether Haines and Hollar were deliberately indifferent when they ordered members of the high school wrestling team to stop wrestling and play

tackle football on an inappropriate floor without wearing any protective equipment. (Doc. 23, at 7-8).

We find that at this juncture, the plaintiffs have adequately alleged that the harm A.C. suffered was foreseeable. The plaintiffs allege that Haines and Hollar created the danger to A.C. by forcing him to play tackle football—a sport for which he was untrained—on mats which were designed to create friction and grip to prevent slipping and sliding where a broken leg is foreseeable. (Doc. 4 ¶¶ 27, 35-36). The fact that the plaintiffs have not pleaded any prior serious injuries or even near-injuries during this drill, as posited by the defendants does not change the foreseeability of the harm. Moreover, the fact that this specific drill did not previously injure A.C. or anyone else was fortunate, but not liability-absolving. *See Lichtenstein v. Lower Merion Sch. Dist.*, Civil Action No. 16-5366, 2017 WL 525889 at *6 (E.D. Pa. Feb. 8, 2017).

Satisfying the requirement of foreseeability, however, "does not end the analysis." *Henry v. Cty. of Erie*, 728 F.3d 275, 283 (3d Cir. 2013). To satisfy the "fairly direct" requirement, a plaintiff "must plausibly allege that state officials' actions 'precipitated or w[ere] the catalyst for' the harm for which the plaintiff brings suit." *Id*. at 285 (alterations in

original). The element will not be satisfied if the connection between the state actor's actions and the incurred harm is "too attenuated . . . to support liability," or is separated by intervening causes. *Morse*, 132 F.3d at 908.

The plaintiffs have also adequately alleged the "fairly direct" requirement of the element, because it was the defendants' action of deciding to play tackle football during wrestling practice without protective equipment on mats designed to prevent slipping that caused A.C.'s injuries.

Accordingly, the plaintiffs have adequately alleged the foreseeability element.

## ii. Shock the Conscience

The second element of the state created danger claim requires a plaintiff to sufficiently plead facts to establish that "a state actor acted with a degree of culpability that shocks the conscience." *Bright*, 443 F.3d at 281. Generally, "the standard of culpability in substantive due process cases . . . is difficult to discern." *Sanford v. Stiles*, 456 F.3d 298, 305 (3d Cir. 2006). Practically speaking, "the measure of what [action] is conscience shocking is no calibrated yard stick' . . . and has an 'elusive'

quality to it." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006) (internal citations omitted). Yet, the shock the conscience standard encompasses "only the most egregious official conduct." *United Artists Theater Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. at 846). As such, "negligent behavior can never rise to the level of conscience shocking." *Kaucher*, 455 F.3d at 426.

In *Stiles*, the Third Circuit clarified "the standard of fault in state-created danger cases." 456 F.3d at 305. There, the court explained that, "[i]n any state-created danger cases, the state actor's behavior must always shock the conscience.  But what is required to meet the conscience-shocking level will depend upon the circumstances of each case, particularly the extent to which deliberation is possible." Establishing what has become known as a "spectrum of culpable conduct," *Kaucher*, 455 F.3d at 426. The *Stiles* court elaborated as follows:

> The level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases. In a hyper pressurized environment, an intent to cause harm is usually required. On the other hand, in cases where deliberation is possible, and officials have the time

> to make unhurried judgments, deliberate indifference is sufficient . . . . deliberate indifference might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known.

*Id.*

The defendants argue that the plaintiffs have failed to allege the existence of acts that shock the conscience to support a state created danger claim. The plaintiffs argue that in making the decision to direct the wrestling team to engage in tackle football practice, Haines and Hollar had enough time to deliberate the consequences of this activity. In addition, the plaintiffs allege that Haines and Hollar chose to participate in the activity as well. At this stage of the case, we agree that the amended complaint adequately alleges the lowest standard of conscience-shocking conduct, deliberate indifference. As stated above, the plaintiffs allege that the defendants allowed the activity to continue for twenty minutes before A.C. was injured. Accordingly, the facts alleged in the amended complaint are sufficient to raise the inference that the decision to participate in the activity of tackle football without protective equipment on mats that are designed to increase friction and to prevent slipping could meet this prong of the criteria.

### iii. Special Relationship

The defendants contend that the plaintiffs have not adequately alleged the special relationship element of his state created danger claim. (Doc. 18, at 9). Rather, the defendants contend that the plaintiffs' allegations of "mere participation" and compulsory attendance at a public school does not meet this element. (*Id.*). The plaintiffs maintain that A.C. was home schooled and a participant on an extra-curricular team. (Doc. 23, at 9). Also, the plaintiffs argue that A.C. had a relationship of coach-player with Haines and Hollar. (*Id.*). To establish the third element of the plaintiffs' claim, they must prove that "a relationship between the state and [A.C.] existed such that [A.C.] was a foreseeable victim of the defendant's acts." *Stiles*, 456 F.3d at 304. The plaintiffs have alleged sufficient facts to satisfy this element. While we agree that public schools, as a general matter, do not have a constitutional duty to protect students from private actors, *Morrow*, 719 F.3d at 170, here, the plaintiffs' claims are not against the other students participating on the wrestling team, but rather, they concern the conduct of state actors—Haines and Hollar. Accordingly, the plaintiffs have satisfied the "special relationship" element.

### iv. Affirmative Act

To satisfy the fourth prong of the state created danger test, a plaintiff must allege that it was the defendants' "affirmative acts which work[ed] to [his] detriment in terms of exposure to danger. It is the misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Phillips*, 515 F.3d at 235 (quoting *Bright*, 433 F.3d at 282) (internal quotation marks omitted). The Third Circuit has "never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised in some fashion." *Id.* The affirmative act element "is often contested because of the inherent difficulty in drawing a line between an affirmative act and a failure to act. Often times there is no clear line to draw; virtually any action may be characterized as a failure to take some alternative action." *L.R.*, 836 F.3d at 235.

Here, the amended complaint alleges that Haines and Hollar "forced" A.C. and other students to play tackle football while at wrestling practice. (Doc. 4 ¶¶ 35, 37). It further alleges that Haines and Hollar made the decision to play tackle football with no protective equipment which caused A.C.'s injuries. (*Id.* ¶ 39).

Although the plaintiffs have adequately pled the elements of a state-created danger claim in Count I of their amended complaint, we are constrained to dismiss it for the reasons set forth below in Section C (*Monell*) and Section D2 (Qualified Immunity).

## B.     Right to Bodily Integrity (Count II)

In Count II of the amended complaint, the plaintiffs allege that Haines and Hollar violated A.C.'s right to bodily integrity under the Fourteenth Amendment.   In their motion to dismiss, the defendants argue that a deprivation of bodily integrity does not have distinct legal standing on its own.  (Doc. 18, at 4).  We agree.  *See Dorley v. South Fayette Twp. Sch. Dist.*, 129 F. Supp 3d 220, 226 (W.D. Pa. 2015) (citing *Philips v. Cty.. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008).   In response, the plaintiffs maintain that the bodily integrity analysis is identical to the state created danger analysis and it has been adequately pled.   However, the plaintiffs have not directed us to any authority to support this position.   Our research confirms that a claim under § 1983 for a violation of the due process right to bodily integrity is brought under the state-created danger doctrine.   *See Bennett ex rel. Irvine v. City of Phila.*, 499 F.3d 281, 286 (3d Cir. 2007).

Accordingly, we will dismiss Count II as duplicative of Count I.

### C. *Monell Claims (Count III)*

The plaintiffs seek to hold the school district, Hantz, and Hollar liable for the alleged unconstitutional conduct of Hantz and Hollar as policymakers for the school district. The defendants seek the dismissal of Count III as to Hantz and Hollar because a *Monell* claim is only appropriate as to governmental entities not individuals. Further the school district seeks dismissal of this claim because it asserts that the plaintiffs did not allege a policy or custom of using football drills to train wrestling team members nor a plausible claim on a failure to train theory.

"On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Id.* at 690. A school district is such a municipality subject to liability as a "person" under § 1983. *McGreevy v.*

*Stroup*, 413 F.3d 359, 367-69 (3d Cir. 2005).

But "[u]nder *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez*, 503 F.3d at 249. "A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

Alternatively, "[a] municipality may be held liable under § 1983 for

failure to train, monitor, or supervise, [but] only where the plaintiff can 'identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.'" *Watson v. Philadelphia Hous. Auth.*, 629 F. Supp. 2d 481, 487 (E.D. Pa. 2009)(quoting *Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005)); *see also Nawuoh v. Venice Ashby Cmty. Ctr.,* 802 F. Supp 2d 633, 645 (E.D. Pa. 2011) ("While municipal liability under § 1983 originally hinged on affirmative policies, or customs, modern jurisprudence has extended it to a [municipality]'s failure to train, supervise and discipline its officers.").

The amended complaint does not identify any affirmative policy or custom adopted or promulgated by the school district itself. Although it does allege, in cursory fashion, that he school district failed to adequately train defendants Haines and Hollar, as well as other faculty, in "safe practice procedures"—specifically, training that addresses the use of "other sports activities for which students are untrained and unprotected . . . i.e.: you cannot play tackle football at wrestling practice"—they have failed to allege any facts from which a factfinder might infer actual or

constructive knowledge by the school district's board of directors of a previous pattern at similar constitutional violations, or of the allegedly inadequate training, which is a prerequisite to a finding of deliberate indifference by a municipality. *See Connicle v. Thompson,* 563 U.S. 51, 62 (2011)("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for the purposes of failure to train . . . . without notice that a course of training is different in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."); *see also Colburn v. Upper Darby Twp.,* 838 F.2d 663, 672 (3d Cir. 1988); *see also Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985) ("[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brown v. City of Pittsburgh*, 586 F.3d 263, 292-93 (3d Cir. 2009)(recognizing that where no explicit policy is identified, "'more proof than the single incident will be necessary' to establish a causal connection between the incident and some municipal policy").

The complaint appears to further suggest that the school district should be held liable because A.C.'s injury could have been prevented if the school district had implemented better policies, such as a policy prohibiting sports practices from including "other unsafe, unprotected sporting activities" for which the student-athletes are not trained. But policies are not deficient simply because they are not the best. *See Serafin v. City of Johnstown*, 53 Fed. App'x 211, 215 (3d Cir. 2002)("The fact that the City's policy was not the most effective policy possible, however, does not, without more, create an unreasonable risk to detainees' safety or demonstrate the City's indifference to such a risk, and there is no 'more' here."; *see also Koreny v. Smith,* Civil Action No. 17-371, 2018 WL 1141513, at *16 (W.D. Pa. Mar. 2, 2018)("An assertion that a constitutional injury could have been avoided with more or better training is insufficient.").

Accordingly, the plaintiffs' § 1983 *Monell* claims will be dismissed for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### D.   *Immunity*

#### 1.   *PSTCA*

In the motion to dismiss, the school district argues that it is entitled to immunity on the plaintiffs' state law claims (i.e., Count IV—Negligence and Count V—Respondeat Superior) pursuant to the Political Subdivision Tort Claims Act, ("PSTCA"), 42 Pa. C.S.A. §§ 8541 *et seq.* The PSTCA generally grants local agencies, such as the school district, immunity from state-law tort claims, with a few enumerated exceptions. *See* 42 Pa. Cons. Stat. Ann. §§ 8541, 8542; *see also Rittenhouse Entm't, Inc. v. City of Wilkes-Barre*, 861 F. Supp. 2d 470, 489 (M.D. Pa. 2012). This immunity has been extended to individual employees of local agencies for acts within the scope of their employment, provided their conduct does not amount to a crime, actual fraud, actual malice, or willful misconduct. *See* 42 Pa. Cons. Stat. Ann. §§ 8545, 8550; *see also Campbell v. Moore*, 92 Fed. App'x 2a 34 (3d Cir. 2004).

The plaintiffs maintain that the real estate exception set forth in 42 Pa. C.S.A. § 8542(b)(3) applies in this case. That section allows liability to be imposed against a governmental entity for actions arising out of the negligent "care, custody or control of real property in the possession of the local agency." *Id.* Specifically, the plaintiffs argue that a defective condition of the flooring of the gymnasium—a part of the real

property—rendered it unsafe for its intended use. Also, they assert that whether the mats or the flooring caused the injury is a question of fact. (Doc. 28, at 13).

In support of their argument that the real estate exception applies, the plaintiffs rely on *Brewington v. Cty. of Phila.*, 199 A.3d 348 (Pa. 2018), where the Pennsylvania Supreme Court held that the real property exception to governmental immunity applied where a student was injured when he ran into a gym wall without padding during gym class may constitute negligence in the care, custody, and control of real property. An examination of the amended complaint reflects that the plaintiffs alleged that A.C.'s injuries occurred by the District's failure to maintain its premises in a safe condition, i.e. by maintaining unsafe floor mats in the areas in which students were playing tackle football and engaging in wrestling practice.

At the pleading stage, and in light of *Brewington*, we will deny the motion as the plaintiffs have sufficiently alleged that the school district failed to maintain the floor by utilizing floor mats unsuitable for tackle football drills. The defendant is free to return to this issue after a factual record is established.

### 2. *Qualified Immunity*

The defendants have asserted that they are entitled to qualified immunity, arguing that directing students to practice a different sport indoors as a method of practice is not a recognized constitutional right, and an alleged improper coaching strategy is not a "clearly established" act of misconduct.

The doctrine of qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533

U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first). "It is the defendants' burden to establish that they are entitled to such immunity." *Beers v. Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001)(citing *Stoneking v. Bradford Area Sch. Dist.*, 822 F.2d 720, 726 (3d Cir. 1989)).

Because qualified immunity results in "immunity from suit rather than a mere defense to liability," determining whether officials are entitled to qualified immunity should be determined "at the earliest possible stage in the litigation." *Id*. at 231-32. But, as the Third Circuit has confirmed, "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reeharst*, 328 Fed. App'x 788, 791 n.3 (3d Cir. 2009)(per curiam). Thus, at the pleading stage, "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006)(quoting *Leveto v. Lapina*, 258F.3d 156, 161 (3d Cir. 2001)).

As discussed above, we find the allegations of the complaint

sufficient to plausibly state a state-created danger claim at this, the pleadings stage. But the defendants may nevertheless prevail on this defense under the second prong of the *Saucier* analysis.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." *Sharp*, 669 F.3d at 159. "When reviewing a qualified immunity defense, courts should examine their own *and* other relevant precedents." *Williams v. Bitner*, 285 F. Supp. 2d 593, 604 n.15 (M.D. Pa. 2003) (citing *Elder v. Holloway*, 510 U.S. 510, 516 (1994)).

The claimed violation of A.C.'s constitutional rights occurred on December 18, 2017. The plaintiffs have failed to identify a controlling case or a robust consensus of cases that could be said to have clearly established the unconstitutionality of the defendants' conduct. See *Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014)(holding that defendants were entitled to qualified immunity because the plaintiff failed to identify a controlling case or a robust consensus of cases that could be said to have

clearly established the unconstitutionality of defendants' conduct); *Lane v. Fraules*, 573 U.S. 228, 246 (2014)(holding that because the constitutional question at issue "was not 'beyond debate'" when the defendant acted, he was entitled to qualified immunity). Indeed, our own review of prior precedent reveals no cases where a state-created danger was established after a student-athlete was required to participate in tackle-football drills, or other obviously violent contact drills, without protective equipment or on a gymnasium floor covered with wrestling mats, which is the level of specificity that both controlling case law and a robust consensus of cases would appear to require us to apply in this analysis. *See Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 17274 (3d cir. 2017)("[I]n November of 2011 it was not so plainly obvious that requiring a student-athlete, fully clothed in protective gear, to continue to participate in practice after sustaining a violent hit and exhibiting concussion symptoms implicated the student athlete's constitutional rights."); *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 640 (3d Cir. 2015)("The case law simply did not inform a reasonable gym teacher that the failure to assess a student who briefly goes under water for the possibility of dry drowning violated that student's constitutional right to

bodily integrity free from unwarranted intrusions by the state."); *Hinterberger v. Iroquois Sch. Dist.*, 548 Fed. App'x 50, 54 (3d Cir. 2013)("it was not 'beyond debate' as of March 2004 that [a parent-volunteer coach]'s decision to introduce a new cheerleading stunt following a delay of several months, through the instruction of an experienced cheerleader, with the use of multiple spotters, but without any matting, violated [the student-athlete]'s substantive due process rights."); *see also Mann*, 872 F.3d at 174 ("The touchstone of qualified immunity analysis is whether there was 'sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited.'")(brackets in original); *Spady*, 800 F.3d at 640 n.7 (collecting cases); *Dorley v. S. Fayette Twp. Sch. Dist.*, Civil Action No. 2:15-cv-00214, 2016 WL 3102227, at *6 (W.D. Pa. June 1, 2016)(characterizing *Spady* as "a game changer in the school activities/state created danger context" and distinguishing colorable constitutional violations involving "conduct that was both egregious *and* intentionally and purposefully focused on causing physical harm to a student" from cases involving "(as pled) grossly negligent or reckless conduct which created a real and

appreciable rise of serious harm, but lacked an intent-to-injure component").

Under these circumstances, based on the facts alleged in the complaint, we find that the individual defendants are entitled to qualified immunity with respect to the plaintiffs' § 1983 state-created damages claims.

### F.    Claims of Robert Cuvo and Lisa Cuvo

The defendants contend that any claims asserted by A.C.'s parents, Robert Cuvo and Lisa Cuvo, on their own behalf must be dismissed because they do not allege that they have suffered injuries or that they possessed a constitutional right that was violated.   In the amended complaint, the plaintiffs alleged that they "bring this action on behalf of A.C., as his parents and guardians." (Doc. 4 ¶ 8).  The plaintiffs have not responded to this part of the motion.  Therefore, the defendants' motion to dismiss these claims will be granted.

### G.    Punitive Damages

The amended complaint seeks an award of punitive damages from defendants Haines and Hollar.  It is well-established that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of*

*Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *see also Strickland v. Mahoning Twp.*, 647 F. Supp. 2d 422, 428 (M.D. Pa. 2009) (dismissing punitive damage claims against individual official-capacity defendants). Dismissal of the plaintiffs' punitive damages claims against Haines and Hollar in their official capacities is appropriate. *See M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 430 (M.D. Pa. 2014); *Cooper ex rel. Transp. Workers Union Local 234 v. Se. Pa. Transp. Auth.*, 474 F. Supp. 2d 720, 721 n.2 (E.D. Pa. 2007). A review of the amended complaint reflects that only Hollar was sued in his official and individual capacities. (Doc. 4 ¶¶ 11-12). Therefore, the motion is granted as to Haines, and as to Hollar only in his official capacity. The motion is denied as to Hollar in his *personal* capacity.

Accordingly, the plaintiffs' claims for punitive damages against Haines and against Hollar *in his official capacity* shall be dismissed with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

An appropriate order follows.

**_s/Joseph F. Saporito, Jr._**
JOSEPH F. SAPORITO, Jr.
United States Magistrate Judge

Dated: March 29, 2019