# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT CUVO and LISA CUVO, on behalf of the minor Child, A.C., | : : : | |
| Plaintiffs, | : : | No. 3:18-cv-01210 |
| v. | : : | (Saporito, M.J.) |
| POCONO MOUNTAIN SCHOOL DISTRICT, et al., | : : : | |
| Defendants. | : | |

## MEMORANDUM

This is a civil rights action, initiated upon the filing of the complaint in this matter on June 14, 2018. (Doc. 1). An amended complaint was filed as a matter of right on June 19, 2018. (Doc. 4). In their amended complaint, the plaintiffs allege violations of A.C.'s federal civil rights while he was a member of the wrestling team of the defendant, Pocono Mountain School District (the "school district"). The plaintiffs also assert state law claims of negligence and respondeat superior. The defendants moved to dismiss the amended complaint (Doc. 14) which we granted in part and denied in part. (Doc. 25; Doc. 26). Thereafter, the plaintiff filed a second amended complaint. (Doc. 27). The defendants have moved to

dismiss the second amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 29). This motion has been fully briefed and is ripe for disposition. (*see* Doc. 30; Doc. 33; Doc. 34). For the reasons set forth herein, we will grant the motion in part and deny it in part.

## I.    *Statement of Facts*

The facts set forth in the second amended complaint (Doc. 29) are as follows: A.C. was a home-schooled student who participated as a member of the school district's wrestling team. The team was coached by defendant Josh Haines and his assistant, defendant Michael Hollar. (Doc. 4 ¶¶16-18). Defendant William Hantz was the athletic director for the school district. During the course of a wrestling practice on December 18, 2017, the members of the wrestling team were told by Haines and Hollar that they would not be wrestling during that practice, but rather they would be playing tackle football. (*Id.* ¶¶19-20). The tackle football was conducted indoors without any protective equipment where Haines and Hollar participated in the activity. (*Id.* ¶¶21-22, 24). Haines and Hollar instructed the team to engage in tackle football despite that the members of the team had no training in playing tackle football. (*Id.* ¶

23). It is alleged that Haines and Hollar engaged in and allowed the activity to continue for approximately twenty minutes where students were getting tackled violently to the ground in ways that it was obvious that injury would occur if the activity was permitted to continue. (*Id.* ¶25). After the activity was conducted for approximately twenty minutes, A.C. was tackled to the ground by another student who was acting pursuant to the order of Haines and Hollar, and as a result, A.C.'s femur snapped in half causing him excruciating pain along with required surgery and extensive physical therapy. (*Id.* ¶¶25-32). Also, the plaintiffs have alleged that the tackle football was being played on wrestling mats which are designed to create friction and grip in order to prevent slipping and sliding. (*Id.* ¶29). When A.C. was tackled, the mat created a grip which did not permit A.C.'s leg to slide and give way therefore causing his femur to snap. (*Id.* ¶ 30). It is alleged that A.C. is permanently unable to participate in activities which he enjoyed prior to this injury. (*Id.* ¶33).

Counts I and II of the second amended complaint assert Fourteenth Amendment claims, "for a state created danger and for the right to bodily integrity." Count III alleges a §1983 *Monell* liability claim. Counts IV

and V allege state law claims for negligence and respondeat superior respectively. The defendants have filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The plaintiffs do not object to the dismissal of Count II and to the dismissal of punitive damages except against Hollar in his individual capacity. (Doc. 33, at 3-4).

## II.  *Legal Standards*

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief is granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen, Inc.,* 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v.*

*McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Under Rule12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991); *Johnsrud v. Carter*, 620 F.2d 29, 32-33 (3d Cir. 1980); *Holocheck v. Luzerne County Head Start, Inc.,* 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005). In deciding the motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellab, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

## III.    Discussion

The defendants have moved for dismissal of the plaintiffs' claims on a variety of grounds including whether the plaintiffs have failed to allege facts which support a §1983 state created danger or bodily integrity claim; whether the plaintiffs' count III *Monell* claims against defendants Haines and Hollar should be dismissed; whether the plaintiffs' second amended complaint should be dismissed on the grounds of immunity; whether the plaintiffs' respondeat superior count should be dismissed for failure to state a claim; whether the plaintiffs are entitled

to punitive damages; and whether the plaintiffs Robert Cuvo and Lisa

Cuvo, have failed to state a claim upon which relief may be granted on

their own behalf.

The plaintiffs have brought this federal civil rights action under

42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute,
> ordinance, regulation, custom or usage, of any
> State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of
> the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but

instead provides remedies for rights established elsewhere. *City of

Oklahoma v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim,

the plaintiff must establish that the defendants, acting under color of

state law, deprived the plaintiff of a right secured by the United States

Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.

1995). To avoid dismissal for failure to state a claim, a civil rights

complaint must state the conduct, time, place, and persons responsible

for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

Here, the plaintiffs advance Fourteenth Amendment claims, based on the events of December 18, 2017, on the basis of a state created danger theory (Count I). The defendants maintain that the plaintiffs' Fourteenth Amendment claims are not cognizable under § 1983.

## A. State-Created Danger (Count I)

### 1. Applicable Law

In *Kniepp v. Tedder*, 95 F.3d 1199, 1201 (3d Cir. 1996), the Third Circuit first adopted the state created danger theory as a mechanism by which plaintiffs may establish constitutional violations, under Section 1983, if an individual incurs harm as a direct result of certain state actions. In other words, "liability may attach where the state acts to *create* or *enhance* a danger that deprives a plaintiff of his or her Fourteenth Amendment rights to substantive due process." *Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013) (emphasis in original).

In *Bright v. Westmoreland County*, 443 F.3d 276 (3d Cir. 2006), the Third Circuit articulated the following four-factor test to determine whether a plaintiff has stated a claim under the state-created danger

exception:

> (1) The harm ultimately caused was foreseeable and fairly direct;

> (2) A state actor acted with a degree of culpability that shocks the conscience;

> (3) A relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

> (4) A state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Id.* at 281.

## 2. Application

The defendants argue that the plaintiffs have alleged no new facts in the second amended complaint to support a viable claim. (Doc. 30, at 3). The plaintiffs acknowledge that they have repleaded the same facts as in the amended complaint. We incorporate by reference our analysis in our Memorandum of March 29, 2019 (Doc. 25), regarding the claim for relief under the theory of a state-created danger. (*Id.* at 7-16). *Cuvo v.*

*Pocono Mountain Sch. Dist.*, No. 3:18-cv-01210, 2019 WL 1424524 at *3 (M.D. Pa. Mar. 29, 2019).  However, our inquiry does not end there as we previously dismissed this count on the application of qualified immunity which we discuss below.

## B.    Right to Bodily Integrity (Count II)

In Count II of the second amended complaint, the plaintiffs allege that Haines and Hollar violated A.C.'s right to bodily integrity under the Fourteenth Amendment.  In their brief in opposition, the plaintiffs do not object to the dismissal of this count.  (Doc. 33, at 3).  For the reasons expressed in our prior Memorandum and because the plaintiffs do not object to the dismissal of this count, we will dismiss Count II as duplicative of Count I.

## C.    *Monell Claims (Count III)*

The plaintiffs seek to hold the school district, Hantz, and Hollar liable for the alleged unconstitutional conduct of Hantz and Hollar as policymakers for the school district.  The defendants seek the dismissal of Count III as to Hantz and Hollar because a *Monell* claim is only appropriate as to governmental entities not individuals.  Further the school district seeks dismissal of this claim because it asserts that the

plaintiffs did not allege a policy or custom of using football drills to train wrestling team members nor a plausible claim on a failure to train theory.

"On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Id.* at 690. A school district is such a municipality subject to liability as a "person" under § 1983. *McGreevy v. Stroup*, 413 F.3d 359, 367-69 (3d Cir. 2005).

But "[u]nder *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to

governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez*, 503 F.3d at 249. "A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

Alternatively, "[a] municipality may be held liable under § 1983 for failure to train, monitor, or supervise, [but] only where the plaintiff can 'identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.'" *Watson v. Philadelphia Hous. Auth.*, 629 F. Supp. 2d 481, 487 (E.D. Pa. 2009)(quoting *Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005)); *see also Nawuoh v. Venice Ashby Cmty. Ctr.,* 802 F. Supp. 2d 633, 645 (E.D.

Pa. 2011) ("While municipal liability under § 1983 originally hinged on affirmative policies, or customs, modern jurisprudence has extended it to a [municipality]'s failure to train, supervise and discipline its officers.").

The second amended complaint does not identify any affirmative policy or custom adopted or promulgated by the school district itself. Although it does allege, in cursory fashion, that the school district failed to adequately train defendants Haines and Hollar, as well as other faculty, in "safe practice procedures"—specifically, training that addresses the use of "other sports activities for which students are untrained and unprotected . . . i.e.: you cannot play tackle football at wrestling practice"—they have failed to allege any facts from which a factfinder might infer actual or constructive knowledge by the school district's board of directors of a previous pattern at similar constitutional violations, or of the allegedly inadequate training, which is a prerequisite to a finding of deliberate indifference by a municipality. *See Connick v. Thompson,* 563 U.S. 51, 62 (2011)("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for the purposes of failure to train . . . Without notice that a course of training is different in a particular respect, decision makers can

hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."); *Colburn v. Upper Darby Twp.,* 838 F.2d 663, 672 (3d Cir. 1988); *see also Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985) ("[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brown v. City of Pittsburgh*, 586 F.3d 263, 292-93 (3d Cir. 2009)(recognizing that where no explicit policy is identified, "'more proof than the single incident will be necessary' to establish a causal connection between the incident and some municipal policy").

The second amended complaint alleged that the defendants were members of the Pennsylvania Interscholastic Athletic Association ("PIAA") and governed by it. (Doc. 27 ¶35). It is further asserted that the instruction of Haines and Hollar for wrestling team members to play football without protective equipment, without training, and on the wrong surface "violated the Constitution, bylaws, rules, regulations, policies, procedures, and/or guidelines implemented by the PIAA." (*Id.* ¶36). Moreover, the plaintiffs further alleged that the district failed to

train Haines and Hollar in the PIAA Constitution, bylaws, rules, regulations, policies, procedures, and guidelines despite the district's prior knowledge that as a member of the PIAA, it was required to provide adequate training. (*Id.* ¶¶61-62). However, the new PIAA allegations are broad averments which are devoid of facts that specifically state a policy, custom, or practice regarding the proper usage of mats, indoor practices, or the utilization of football drills as an alternative to wrestling training. Thus, we are not persuaded that the allegations of the second amended complaint are enough to change our opinion on the *Monell* issue.

The second amended complaint appears to further suggest that the school district should be held liable because A.C.'s injury could have been prevented if the school district had implemented better policies, such as a policy prohibiting sports practices from including "other unsafe, unprotected sporting activities" for which the student-athletes are not trained. But policies are not deficient simply because they are not the best. *See Serafin v. City of Johnstown*, 53 Fed. App'x 211, 215 (3d Cir. 2002)("The fact that the City's policy was not the most effective policy possible, however, does not, without more, create an unreasonable risk to

detainees' safety or demonstrate the City's indifference to such a risk, and there is no 'more' here."); *see also Koreny v. Smith,* Civil Action No. 17-371, 2018 WL 1141513, at *16 (W.D. Pa. Mar. 2, 2018)("An assertion that a constitutional injury could have been avoided with more or better training is insufficient.").

Accordingly, the plaintiffs' § 1983 *Monell* claims will be dismissed for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## D.   *Immunity*

### 1.   *PSTCA*

We incorporate by reference our prior Memorandum addressing this issue of immunity as it relates to Count IV—Negligence and Count V—Respondeat Superior pursuant to the Political Subdivision Tort Claims Act, ("PSTCA"), 42 Pa. C.S.A. §§ 8541 *et seq.* Thus, we will deny the motion as the plaintiffs have sufficiently alleged that the school district failed to maintain the floor by utilizing floor mats unsuitable for tackle football drills. The defendant is free to return to this issue after a factual record is established.

### 2.   *Qualified Immunity*

The defendants have asserted that they are entitled to qualified immunity, arguing that directing students to practice a different sport indoors as a method of practice is not a recognized constitutional right, and an alleged improper coaching strategy is not a "clearly established" act of misconduct.

The doctrine of qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the

two *Saucier* prongs should be addressed first). "It is the defendants' burden to establish that they are entitled to such immunity." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001)(citing *Stoneking v. Bradford Area Sch. Dist.*, 822 F.2d 720, 726 (3d Cir. 1989)).

Because qualified immunity results in "immunity from suit rather than a mere defense to liability," determining whether officials are entitled to qualified immunity should be determined "at the earliest possible stage in the litigation." *Id.* at 231-32. But, as the Third Circuit has confirmed, "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 Fed. App'x 788, 791 n.3 (3d Cir. 2009)(per curiam). Thus, at the pleading stage, "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006)(quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)).

As discussed above, we find the allegations of the second amended complaint sufficient to plausibly state a state-created danger claim at this, the pleadings stage. But the defendants may nevertheless prevail

on this defense under the second prong of the *Saucier* analysis.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." *Sharp*, 669 F.3d at 159. "When reviewing a qualified immunity defense, courts should examine their own *and* other relevant precedents." *Williams v. Bitner*, 285 F. Supp. 2d 593, 604 n.15 (M.D. Pa. 2003) (citing *Elder v. Holloway*, 510 U.S. 510, 516 (1994)).

The claimed violation of A.C.'s constitutional rights occurred on December 18, 2017. We previously ruled that the plaintiffs failed to identify a controlling case or a robust consensus of cases that could be said to have clearly established the unconstitutionality of the defendants' conduct. See *Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014)(holding that defendants were entitled to qualified immunity because the plaintiff failed to identify a controlling case or a robust consensus of cases that could be said to have clearly established the unconstitutionality of defendants' conduct); *Lane v. Fraules*, 573 U.S. 228, 246 (2014)(holding

that because the constitutional question at issue "was not 'beyond debate'" when the defendant acted, he was entitled to qualified immunity).  Indeed, our own review of prior precedent reveals no cases where a state-created danger was established after a student-athlete was required to participate in tackle-football drills, or other obviously violent contact drills, without protective equipment or on a gymnasium floor covered with wrestling mats, which is the level of specificity that both controlling case law and a robust consensus of cases would appear to require us to apply in this analysis.  *See Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 17274 (3d cir. 2017)("[I]n November of 2011 it was not so plainly obvious that requiring a student-athlete, fully clothed in protective gear, to continue to participate in practice after sustaining a violent hit and exhibiting concussion symptoms implicated the student athlete's constitutional rights."); *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 640 (3d Cir. 2015)("The case law simply did not inform a reasonable gym teacher that the failure to assess a student who briefly goes under water for the possibility of dry drowning violated that student's constitutional right to bodily integrity free from unwarranted intrusions by the state."); *Hinterberger v. Iroquois Sch. Dist.*, 548 Fed.

App'x 50, 54 (3d Cir. 2013)("it was not 'beyond debate' as of March 2004 that [a parent-volunteer coach]'s decision to introduce a new cheerleading  stunt following a delay of several months, through the instruction of an experienced cheerleader, with the use of multiple spotters, but without any matting, violated [the student-athlete]'s substantive due process rights."); *see also Mann*, 872 F.3d at 174 ("The touchstone of qualified immunity analysis is whether there was 'sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is *constitutionally* prohibited.'")(emphasis added)(brackets in original); *Spady*, 800 F.3d at 640 n.7 (collecting cases); *Dorley v. S. Fayette Twp. Sch. Dist.*, Civil Action No. 2:15-cv-00214, 2016 WL 3102227, at *6 (W.D. Pa. June 1, 2016)(characterizing *Spady* as "a game changer in the school activities/state created danger context" and distinguishing colorable constitutional violations involving "conduct that was both egregious *and* intentionally and purposefully focused on causing physical harm to a student" from cases involving "(as pled) grossly negligent or reckless conduct which created a real and appreciable rise of serious harm, but lacked an intent-to-injure

component").

Nevertheless, the plaintiffs now argue that *Hall v. Martin*, Civ. Action No. 17-523, 2017 WL 3298316 (W.D. Pa. 2017), is controlling as it shows that the right at issue is clearly established and provided a fair warning to the defendants. (Doc. 33, at 6). In *Hall*, the plaintiff, a high school student, was instructed by the gym teacher, Martin, to play floor hockey "like regular hockey" as a regular gym activity. The students were provided with floor hockey sticks, goalie nets, and a hockey net. They were not provided with eye or facial protection. During the game, Hall played goalie and was hit in the left eye by the floor hockey puck causing him to be permanently legally blind. Unlike the facts of our case, in *Hall*, the gym teacher was aware from past incidents that students who played goalie were injured after being hit by a floor hockey puck. Some of those incidents were reported to the school nurse who then notified the school district about the injuries. Under those facts, the court found that the plaintiff pled sufficient facts to state a viable § 1983 claim against the gym teacher, thereby defeating a Rule 12(b)(6) motion to dismiss. The court did not address the application of qualified immunity as the motion to dismiss did not raise it.

Here, the plaintiffs define the constitutional right as prohibiting students from engaging in dangerous sports without protective equipment where it is foreseeable that an injury will occur. (*Id*. at 7). In response to the defendants' position that *Hall* is distinguishable from the facts of this case because in *Hall* there was an awareness of prior injuries, the plaintiffs contend that the issue of prior injuries establishes the foreseeability element to the state-created danger theory. Further, the plaintiffs point out that we previously ruled that the foreseeability element was met in the first amended complaint without an allegation of prior injuries. (*Id*.). In our discussion of the foreseeability element of the state-created danger theory in our previous ruling, we cited Third Circuit precedent that foreseeability is adequately pled in three situations where: (1) the state actor's awareness rises to the level of actual knowledge; (2) the state actor is aware of risk that is sufficiently concrete to put the actor on notice, and (3) the state actor would be informed of the foreseeability of harm by ordinary common sense and experience. *Cuvo v. Pocono Mountain Sch. Dist.*, No. 3:18-cv-01210, 2019 WL 1424524 at *3 (M.D. Pa. Mar. 29, 2019)(citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 238 (3d Cir. 2008), and *Kniepp v. Tedder*, 95 F.3d 1199, 1201 (3d Cir.

1996)).

In the second amended complaint, the plaintiffs alleged the following:

> 25.    Defendants Haines and Hollar engaged in and allowed this activity (sic) continue for approximately twenty minutes, all the while watching students get tackled violently to the ground in ways such that it was obvious that injury would occur if the activity was permitted to continue.
>
> \* \* \* \*
>
> 39.    Haines and Hollar knew or should have known of this due to their level of experience in teaching, coaching, and or education.

Under these circumstances, based on the facts alleged in the second amended complaint, we find that at the pleading stage it is premature determine whether the individual defendants are entitled to qualified immunity with respect to the plaintiffs' § 1983 state-created damages claim.  We further find that it is necessary to develop a factual record on this issue.

## F.    *Punitive Damages*

The second amended complaint seeks an award of punitive damages from defendants Haines and Hollar.  It is well-established that

"a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *see also Strickland v. Mahoning Twp.*, 647 F. Supp. 2d 422, 428 (M.D. Pa. 2009) (dismissing punitive damage claims against individual official-capacity defendants). Dismissal of the plaintiffs' punitive damages claims against Haines and Hollar in their official capacities is appropriate. *See M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 430 (M.D. Pa. 2014); *Cooper ex rel. Transp. Workers Union Local 234 v. Se. Pa. Transp. Auth.*, 474 F. Supp. 2d 720, 721 n.2 (E.D. Pa. 2007). A review of the amended complaint reflects that only Hollar was sued in his official and individual capacities.  (Doc. 4 ¶¶ 11-12).  Therefore, the motion is granted as to Haines, and as to Hollar only in his official capacity.  The motion is denied as to Hollar in his *personal* capacity.[1]

Accordingly, the plaintiffs' claims for punitive damages against Haines and against Hollar *in his official capacity* shall be dismissed with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[1] In their brief in opposition, the plaintiffs do not object to the dismissal of the claim for punitive damages consistent with our prior ruling.  (Doc. 33, at 3-4).

An appropriate order follows.

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, Jr.
United States Magistrate Judge

Dated:  December 23, 2019