# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT CUVO and LISA CUVO
on behalf of the minor child, A.C.,

      Plaintiffs,

      v.

POCONO MOUNTAIN SCHOOL
DISTRICT, et al.,

      Defendants.

CIVIL ACTION NO. 3:18-cv-01210

(SAPORITO, M.J.)

## MEMORANDUM

This federal civil rights action commenced when the plaintiffs, appearing through counsel, filed the original complaint in this matter on June 14, 2018. Following the partial dismissal of an amended complaint, the plaintiffs filed their second amended complaint—the currently operative complaint—on April 22, 2019. On December 23, 2019, parts of the second amended complaint were dismissed as well. Now, following the completion of discovery, the defendants have moved for summary judgment with respect to the remainder of the second amended complaint.

## I.   BACKGROUND

The plaintiffs are parents to A.C., a home-schooled student who

participated as a member of the Pocono Mountain School District's wrestling team. The coach of the wrestling team was Josh Haines, and Michael Hollar was an assistant coach. The school district, Haines, and Hollar are the defendants to the plaintiffs' remaining claims.[1]

At a wrestling team practice on December 18, 2017, the members of the wrestling team, including A.C., were told by Haines and Hollar that they would be playing a game the coaches called "flickerball" inside the wrestling room.[2] While this may not have been the first time the wrestling team had played flickerball, it was the first time they had played it indoors. The floor and walls of the wrestling room were covered

---

[1] The second amended complaint also named the school district's athletic director, William Hantz, as a defendant, but the only claim asserted against Hantz—a § 1983 *Monell* claim set forth in Count III of the second amended complaint—has been dismissed.

[2] The parties dispute the most appropriate name for the game they played. A.C. testified at his deposition that Hollar called the game both "smear the queer" and "flickerball"; both coaches testified that the game they played was known as either "flickerball" or "wall ball." A.C. testified that the game was essentially just tackle football; the coaches expressly denied that the wrestlers had played tackle football. The name used to describe the game, however, is immaterial to the claims and defenses in this case. Our use of "flickerball" in this opinion signifies nothing more than the most common label used by the witnesses whose deposition transcripts are present in the record on summary judgment.

in two-inch thick wrestling mats.[3]

Although the details of the game's rules are disputed, the game of flickerball—as played that day—appeared to involve a single ball and two teams of wrestlers.[4] Similar to football, ultimate frisbee, or other games, the team in possession of the ball attempted to move the ball from one end of the room to the other, scoring a point by touching the ball to the wall opposite from their starting point. The ball was moved down the room by passing the ball from one teammate to another. If the ball was dropped or otherwise hit the ground, the defending team would take possession of the ball and likewise attempt to score by touching it against the opposite wall. In addition, as played by the wrestling team on this day, the defending team could take possession by tackling the ball carrier—or performing a wrestling takedown on him.[5]

---

[3] The plaintiffs have contended that this padding—or the aged and worn state of the mats—made the wrestling room particularly unsuitable for an athletic activity such as this.

[4] The plaintiff contends that the ball used that day was a football. The defendants dispute this. The particular type of ball used that day, or typically used, is immaterial.

[5] The plaintiffs contend that the players were instructed to "tackle" the ball carrier, as in tackle football. The defendants vigorously dispute this, contending that the wrestlers were instead instructed to perform wrestling *takedowns*, which they further contend are distinctly different

*(continued on next page)*

The plaintiffs contend that this additional rule (permitting the players to tackle one another), coupled with the playing surface on which the game was played (a floor covered in wrestling mats designed to prevent slipping or sliding) and an absence of the sort of protective equipment typically provided to tackle football players, caused the injury to A.C. that occurred during the game that day.

After the wrestlers had been playing for about 20 minutes, with Haines and Hollar watching and participating at times, A.C. was tackled by another wrestler when he had received or was attempting to receive a pass. When tackled, A.C.'s leg did not slide or otherwise give way like it purportedly would have on another surface, causing his femur to snap. During the 20 minutes leading up to A.C.'s injury, the plaintiffs contend that Haines and Hollar observed "numerous" other football-like tackles.

## II.   LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary

---

from tackles as performed in football. The precise nature of this form of contact—and whether the defendants' distinction is indeed a difference at all—is a genuine dispute of material fact reserved to the jury. For summary judgment purposes, we must accept the non-moving plaintiff's position that "tackle" and "takedown" are synonymous, and we will generally use the term "tackle" in this opinion.

judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a prima facie showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d

378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

## III.   DISCUSSION

Some of the plaintiffs' claims have already been dismissed at earlier stages of this litigation. *See generally Cuvo v. Pocono Mountain Sch. Dist.*, No. 3:18-cv-01210, 2019 WL 7105560 (M.D. Pa. Dec. 23, 2019) (partial dismissal of second amended complaint) (Doc. 37); *Cuvo v. Pocono Mountain Sch. Dist.*, No. 3:18-cv-01210, 2019 WL 1424524 (M.D. Pa. Mar. 29, 2019) (partial dismissal of first amended complaint) (Doc. 25). What remains before us are: (1) a federal civil rights claim against Haines and Hollar under 42 U.S.C. § 1983, asserting a violation of A.C.'s Fourteenth Amendment substantive due process rights based on a state-created danger theory of liability, set forth in Count I of the second amended complaint; (2) state-law negligence claims against Haines, Hollar, and the school district, set forth in Count IV of the second amended complaint; and (3) and a state-law respondeat superior liability claim against the school district, based on the allegedly negligent conduct of Haines and Hollar, set forth in Count V of the second amended complaint.

## A. State-Created Danger Claim

In their primary claim, upon which federal jurisdiction over this case rests, the plaintiffs claim that the conduct of coaches Haines and Hollar on December 18, 2017, violated A.C's right to substantive due process under the Fourteenth Amendment to the United States Constitution, made actionable by 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, a plaintiff must show that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

Here, the plaintiff's Fourteenth Amendment claim relies on a state-created danger theory of liability. "While states generally do not have an obligation to protect citizens, under the state-created danger doctrine, a public actor may be liable for harm a citizen suffers if 'the state acts to create or enhance a danger that deprives the plaintiff of his' due process rights." *K.W. ex rel. White v. Se. Pa. Transp. Auth.*, 760 Fed. App'x 104, 107 (3d Cir. 2019) (quoting *Sanford v. Stiles*, 456 F.3d 298, 304 (3d Cir. 2006)). The state-created danger doctrine "embodies the principle that the government has an obligation under the Fourteenth Amendment's Due Process Clause 'to protect individuals against dangers that the government itself creates.'" *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018) (quoting *Haberle v. Troxell*, 885 F.3d 170, 176 (3d Cir. 2018)).

To establish a state-created danger claim, a plaintiff must show:

> (1) the harm ultimately caused by the state actor's conduct was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way

> that created a danger to the citizen or that rendered
> the citizen more vulnerable to danger than had the
> state not acted at all.

*Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 170 (3d Cir. 2017)

(quoting *Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006))

(brackets omitted). All four elements must be satisfied. *See Phillips v.*

*Cty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008); *Sanford*, 456 F.3d at

311.

"The first element of a state-created danger claim requires

plaintiffs to establish that the harm sustained as a result of the

defendant's conduct was 'foreseeable and fairly direct.'" *Mann*, 872 F.3d

at 171. Based on the evidence of record, viewed in the light most favorable

to the non-moving plaintiffs, we find that a reasonable jury could

conclude that the injury suffered by A.C. was a "foreseeable and fairly

direct" harm of his being instructed to play "flickerball" with the added

element of full-contact tackling, without any personal protective

equipment, in a padded wrestling room, particularly in light of the

defendants' observation of numerous other tackles during the first 20

minutes of the game prior to A.C.'s injury. *Cf. B.D. v. Downingtown Area*

*Sch. Dist.*, Civil Action No. 15-6375, 2016 WL 3405460, at *3 (E.D. Pa.

June 21, 2016) (finding that several "small collisions and/or near misses" prior to plaintiff's injury "put the Coaches on notice of the potential for a serious collision").

With respect to the second element, the Third Circuit has observed that "[t]he exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends on the circumstances of a particular case." *Estate of Smith v. Marasco*, 430 F.3d 140, 153 (3d Cir. 2005). "The level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases. . . . [I]n cases where deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient." *Sanford*, 456 F.3d at 309. Here, in the context of a school athletics practice, the plaintiffs need only prove deliberate indifference. *See Mann*, 872 F.3d at 171. Based on the evidence of record, viewed in the light most favorable to the non-moving plaintiffs, we find that a reasonable jury could conclude that the defendants acted with deliberate indifference where they were aware of the unusually serious risk of harm, having instructed the wrestlers to play tackle flickerball in a wrestling room covered in wrestling mats designed to prevent slipping or sliding, without any personal protective

- 11 -

equipment, and having observed numerous other tackles in the 20 minutes preceding A.C.'s injury, and where they failed to address these known, serious risks by allowing the game to continue even after observing those other tackles. *Cf. B.D.*, 2016 WL 3405460, at *4.

To establish the third element, a plaintiff is required to prove "a relationship between the state and the plaintiff such that the plaintiff was a foreseeable victim of the defendant's acts." *Sanford*, 456 F.3d at 304. As the Third Circuit has recognized, "[i]t is clear that a student-athlete stands in such a relationship with the coaching staff." *Mann*, 872 F.3d at 172.

Finally, the fourth element requires the plaintiffs to show that Haines and Hollar affirmatively used their authority in a way that created a danger to A.C. or rendered him more vulnerable to danger. *Id.* Based on the evidence of record, viewed in the light most favorable to the non-moving plaintiffs, we find that a reasonable jury could conclude that the coaches acted affirmatively in instructing the wrestlers to play tackle flickerball in a wrestling room covered in wrestling mats designed to prevent slipping or sliding, without any personal protective equipment, and this affirmative conduct rendered A.C. more vulnerable to danger.

*Cf. B.D.*, 2016 WL 3405460, at *5.

Thus, based on the evidence of record, viewed in the light most favorable to the non-moving plaintiffs, a reasonable jury could conclude that the plaintiffs have satisfied all four of elements of the state-created danger claim they have asserted in Count I of the second amended complaint.

### B. Qualified Immunity Defense

Our inquiry with respect to the plaintiffs' state-created danger claim does not end there. In addition to seeking summary judgment on the merits of the plaintiffs' § 1983 claim, the defendants have interposed the affirmative defense of qualified immunity.

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they

perform their duties reasonably." *Id.* Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325–26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first). As discussed above, there exists a genuine dispute of material fact on the merits of the plaintiffs' state-created danger claim. But the defendants may nevertheless prevail

on summary judgment with respect to this claim under the second prong of the *Saucier* analysis.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. It is the plaintiff who bears the initial burden of demonstrating that the constitutional right at issue was clearly established at the time of the claimed violation. *See Davis v. Scherer*, 468 U.S. 183, 197 (1984) ("A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue."); *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) ("Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right.").

"In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." *Sharp*, 669 F.3d at 159. If the right is defined too broadly, at

a high level of generality, it risks "convert[ing] the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "We are thus required to frame the right at issue in a more particularized, and hence more relevant, sense, in light of the case's specific context, not as a broad general proposition." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015) (citations and internal quotation marks omitted).

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 640 (citation omitted).

In this case, the specific context is a student-athlete who, while at wrestling practice, was instructed by coaches to participate in a team game with other student-athletes involving violent physical contact similar to tackle football, without protective equipment, which resulted in a gruesome injury when he was tackled by another student-athlete. As framed by the plaintiffs, the specific constitutional right under the Due

Process Clause in this context is a right to be free from playing dangerous sports without protective equipment where it is foreseeable that an injury will occur.[6] (*See* Doc. 64, at 22.)

In evaluating whether a constitutional right is clearly established, we must first look to factually analogous Supreme Court precedent, as well as binding Third Circuit opinions. *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021). Next, we must consider whether there is a "a robust consensus of cases of persuasive authority." *Id.*; *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). This persuasive authority may include appellate decisions from other circuits, or district court decisions, from within the Third Circuit or elsewhere. *Id.*; *see also Doe v. Delie*, 257 F.3d 309, 321 & n.10 (3d Cir. 2001).

Here, there is no factually analogous Supreme Court precedent.

The plaintiff points to a single binding Third Circuit decision—

---

[6] We note that the plaintiffs appear to suggest a second right—a constitutional right to have coaches abide by Pennsylvania Interscholastic Athletic Association ("PIAA") guidelines, which happen to prohibit playing tackle football without appropriate protective equipment. But while PIAA guidelines may inform a factfinder's determination whether an injury was foreseeable based on a failure to abide by such guidelines, they do not themselves create a federal constitutional right. *See B.D.*, 2016 WL 3405460, at *4 n.4.

*Mann v. Palmerton Area School District*, 872 F.3d 165 (3d Cir. 2017). In

that case, the Third Circuit held that:

> [T]here exists a relationship between a student-athlete
> and coach at a state-sponsored school such that the
> coach may be held liable where the coach requires a
> player, showing signs of a concussion, to continue to be
> exposed to violent hits. Stated otherwise, we hold that
> an injured student-athlete participating in a contact
> sport has a constitutional right to be protected from
> further harm, and that a state actor violates this right
> when the injured student-athlete is required to be
> exposed to a risk of harm by continuing to practice or
> compete.

*Mann*, 872 F.3d at 172. The decision in *Mann* established that a coach

who requires an *injured* student-athlete to *continue* to practice or

compete *after* showing signs of injury may have violated the substantive

due process rights of the injured student-athlete. This case, however,

does not involve a coach compelling an injured student-athlete to

continue after being injured, but rather an *initial* instruction to an

entirely *un-injured* student-athlete to participate in contact sport

activity. We cannot say that a reasonable official would understand

*Mann* to prohibit him or her from instructing a student-athlete

participating in wrestling, itself a physical contact sport, from

participating in other potentially dangerous contact sports activity

without protective equipment while at practice.

The plaintiffs cite no other binding Third Circuit decisions, and we find none.

Turning to persuasive authority, the plaintiffs cite an unpublished Third Circuit decision, *Hinterberger v. Iroquois School District*, 548 Fed. App'x 50 (3d Cir. 2013), and a district court decision cited therein, *Sciotto v. Marple Newton School District*, 81 F. Supp. 2d 559 (E.D. Pa. 1999). *Hinterberger* did not affirmatively establish the contours of a substantive due process right. Rather, it was limited to consideration of a qualified immunity defense, finding that:

> It was not "beyond debate" as of March 2004 that [a coach's] decision to introduce a new cheerleading stunt following a delay of several months, through instruction of an experienced cheerleader, with the use of multiple spotters, but without any matting, violated [the student-athlete's] substantive due process rights.

*Id.* at 54; *see also id.* ("[Plaintiff] does not cite, and we have not found, any precedential circuit court decisions finding a state-created danger in the context of a school athletic practice.").

But the plaintiff appears to cite *Hinterberger* not for any holding by the Third Circuit, but in an effort to reference the *Sciotto* decision cited therein, in support of an argument that failure to abide by PIAA

guidelines can result in liability under a state-created danger theory. The *Hinterberger* court did not cite *Sciotto* approvingly, but only to note that the plaintiff had relied on *Sciotto* in support of her contention that the right she asserted was clearly established. *See Hinterberger*, 548 Fed. App'x at 53. Ultimately, however, the *Hinterberger* court found *Sciotto* did not place the cheerleading coach on notice that her actions amounted to a constitutional violation. *Id.* at 54.

Moreover, *Sciotto* itself is of limited persuasive weight in this context. In *Sciotto*, a federal district court denied qualified immunity, broadly defining the constitutional right at issue as "a student's right, in a school setting, to freedom from school officials' deliberate indifference to, or acts that increase the risk of serious injury from unjustified invasions of bodily integrity perpetrated by third parties." *Sciotto*, 81 F. Supp. 2d at 570. In a later, unrelated appellate case, where the appellant echoed *Sciotto*'s broadly defined right, the Third Circuit rejected this construction of the right at issue as overbroad. *See Spady*, 800 F.3d at 638–39. Nevertheless, as a district court decision, the Third Circuit has twice considered *Sciotto* as persuasive authority in evaluating qualified immunity in the context of school athletics, both times finding that

*Sciotto* did not itself constitute clearly established law. *See Spady*, 800 F. 3d at 639–50; *Hinterberger*, 548 Fed. App'x at 53–54. This court has reached the same conclusion before as well. *See Mann v. Palmerton Area Sch. Dist.*, 189 F. Supp. 3d 467, 479 (M.D. Pa. 2016), *aff'd*, 872 F.3d 165 (3d Cir. 2017). As the Third Circuit noted in the margin in *Spady*,

> when faced with factual scenarios analogous to *Sciotto*—i.e., injuries sustained during school activities—several district courts in this circuit have reached decidedly different conclusions and declined to find a constitutional violation. These cases demonstrate that there is no vigorous consensus of authority to support *Sciotto*'s broad holding.

*Spady*, 800 F.3d at 640 n.7 (collecting cases, citations omitted).

The plaintiffs primarily rely on a district court opinion in *Hall v. Martin*, Civil Action No. 17-523, 2017 WL 3298316 (W.D. Pa. Aug. 2, 2017), which was issued four months before the incident in which A.C. was injured. *Hall* involved a § 1983 claim based on an injury to a student during gym class and a defendant's motion to dismiss the complaint for failure to state a claim. The complaint alleged that the defendant gym teacher had regularly instructed his class, including Hall, to play floor hockey as a gym activity. Hall was selected, by other students, to play goalie on the day of his injury. Students were provided with floor hockey

sticks, goalie nets, and a hockey puck, but not eye or facial protection. On the day in question, the gym teacher instructed the class to play floor hockey "like regular hockey." During the game, Hall was hit in the eye with the puck, causing permanent injury and legal blindness. The complaint further alleged that students had previously been injured after being hit with a hockey puck while playing goalie in the teacher's gym classes, and the teacher was aware of these prior incidents. Based on these factual allegations, the *Hall* court found that the plaintiff had pleaded sufficient facts to state a plausible Fourteenth Amendment state-created danger claim. *See id.* at *3–*4. Qualified immunity was not at issue.

The defendants point to one primary distinction between *Hall* and this case. In *Hall*, there were "numerous" prior occasions in which students were injured after being hit by a floor hockey puck. *See id.* at *3. In this case, however, the wrestlers had never played this version of flickerball indoors, and there were no prior injuries.[7] But irrespective of

---

[7] The plaintiffs dispute the defendants' factual statement that there were no prior injuries, but the deposition testimony they cite does not support their position. At his deposition, A.C. testified that other tackles had occurred in the 20 minutes prior to his injury, and that "tackling *(continued on next page)*

this factual distinction, this single district court decision, ruling on a motion to dismiss based on factual pleadings rather than actual evidence, does not constitute "clearly established law" with respect to a student-athlete's constitutional right to be free from playing dangerous sports without protective equipment where it is foreseeable that an injury will occur.[8] Even coupled with *Sciotto*, the only other case cited by the plaintiff that found a constitutional violation to have occurred, these two decisions fall *well short* of the "robust consensus of cases of persuasive authority" necessary to place it "beyond debate" as of December 2017 that such a right was clearly established law, particularly in light of the countervailing body of case law declining to find constitutional violations in the context of school athletic activities. *See al-Kidd*, 563 U.S. at 741,

---

hurts in general," but he also expressly admitted that no actual injuries had occurred to his knowledge. (*See* A.C. Dep. Tr. 71, 119–20, Doc. 63-1, at 18, 30.)

[8] Indeed, we note that, when presented with a subsequent motion for summary judgment on qualified immunity grounds, the *Hall* court defined the right at issue more narrowly, as "the right to affirmative intervention by a school teacher to minimize the risk of injury to a student who opted to play floor hockey, using a felt-covered puck, as goalie without protective gear." *See Hall v. Martin*, Civil Action No. 2:17-cv-523, slip op. at 9 (W.D. Pa. July 19, 2019), ECF No. 56. We further note that the *Hall* court granted summary judgment in favor of the gym teacher on qualified immunity grounds. *See id.*

742; *Peroza-Benitez*, 994 F.3d at 165; *Spady*, 800 F.3d at 640 n.7; *Hinterberger*, 548 Fed. App'x at 54.

It is beyond dispute that A.C.'s injury was gruesome and unfortunate. There are genuine factual disputes with respect to whether the injury was indeed foreseeable under the circumstances, and whether it may have constituted a violation of his substantive due process rights. But we find that the plaintiffs have failed to meet their burden of establishing that, in December 2017, it was clearly established law that a student-athlete had a constitutional right to be free from playing dangerous sports without protective equipment where it is foreseeable that an injury will occur. *See Davis*, 468 U.S. at 197; *Sherwood*, 113 F.3d at 399.

Accordingly, we are compelled to grant the defendants' motion for summary judgment with respect to the plaintiffs' § 1983 state-created danger claim set forth in Count I of the second amended complaint.

### C. State-Law Tort Claims

In addition to the § 1983 claim discussed above, the second amended complaint has asserted state-law negligence and respondeat superior claims against the defendants. But, where a district court has

dismissed all claims over which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction over state-law claims. *See* 28 U.S.C. § 1367(c)(3); *see also, e.g.*, *Lundgren v. AmeriStar Credit Solutions, Inc.*, 40 F. Supp. 3d 543, 551–52 (W.D. Pa. 2014) (declining to exercise supplemental jurisdiction over state-law claims after granting summary judgment on federal claims); *Mark v. Borough of Hatboro*, 5856 F. Supp. 966, 976–77 (E.D. Pa. 1994) (same), *aff'd*, 51 F.3d 1137 (3d Cir. 1995); *Cruz v. City of Wilmington*, 814 F. Supp. 405, 414 (D. Del. 1993) (same). Whether the court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state-law claims remain, the balance of these factors indicates that these remaining claims properly belong in state court. *Cohill*, 484 U.S. at 350. Finding nothing in the record to distinguish this case from the ordinary one, the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims." *See Cohill*, 484 U.S. at 350 n.7. Therefore, the plaintiffs' state-law claims will be

dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## IV.   CONCLUSION

For the foregoing reasons, we will grant summary judgment in favor of the defendants and against the plaintiffs with respect to their § 1983 state-created danger due process claim, set forth in Count I of the second amended complaint, and we will dismiss the plaintiffs' supplemental state-law tort claims, set forth in Counts IV and V of the second amended complaint, without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

An appropriate order follows.

Dated: March 21, 2022                          _**s/Joseph F. Saporito, Jr**_.
                                               JOSEPH F. SAPORITO, JR.
                                               United States Magistrate Judge